IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MICHAEL JONES, #1456028 | § | |
| VS. | § | CIVIL ACTION NO. 6:08cv293 |
| CHEROKEE COUNTY, TEXAS, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER OF PARTIAL DISMISSAL

Plaintiff Michael Jones, a Texas prison inmate, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The Defendants are Cherokee County and Lieutenant Deputy (now Captain) Chris White. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c). The present Memorandum Opinion concerns the Defendants' motion for summary judgment (docket entry #69), the Plaintiff's response (docket entry #79), and the Defendants' reply (docket entry #82), along with collateral motions.

### Facts of the Case

The original complaint was filed on July 14, 2008. The complaint was filed *pro se*. On December 9, 2008, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Plaintiff testified that he was evading arrest from city police in Bullard on August 3, 2006. He ran out of the woods at a convenience store near Troup. He observed a police car and went behind a dumpster to hide. An officer pulled him out. Various officers, including officers from the Texas prison system, restrained him, and he gave up.

1

The Plaintiff's complaint focuses on events that subsequently occurred. He alleged that a Cherokee County deputy drove up, ran towards him and kicked him in the face. He then lost consciousness. He did not know the name of the deputy, although he described him as a young officer in his mid to upper twenties, 150 to 180 pounds, and approximately 5'8". He tried to find out the name of the deputy, but his identity was kept confidential. Medical personnel were treating him when he regained consciousness. He was transported to a hospital. The Plaintiff testified that his injuries included broken teeth and swelling around his eyes. The incident was reported in local newspapers. The Plaintiff was convicted in Smith County of the offense of evading arrest.

At the conclusion of the hearing, the Court concluded that the Plaintiff should be permitted to proceed with his claims. An attorney was appointed to represent the Plaintiff. The Plaintiff filed an amended complaint (docket entry #43) naming Cherokee County and Lieutenant Deputy Chris White as defendants.

## Defendants' Motion for Summary Judgment

The Defendants filed a motion for summary judgment (docket entry #69) on October 13, 2009. They argued that they are entitled to summary judgment for the following reasons:

1. Cherokee County, Texas did not have any policies, procedures, or processes or the absence of any policies, procedures, or processes that violated the constitutional rights of the Plaintiff;

2. Cherokee County, Texas is entitled to official immunity; and

3. The evidence is uncontroverted that Chris White is not the unidentified officer alleged to have kicked the Plaintiff while he was laying on the ground in restraints.

They added that the issues to be decided by the Court concern their arguments as to why they are entitled to summary judgment. In support of the motion, the Defendants submitted *Spears* hearing

and deposition testimony from the Plaintiff; deposition testimony from Officer Richards, Captain Chris White, Warden Steven Swift, Sheriff James Campbell, Lt. Jimmy Evans; and Cherokee County's policy on use of force.

The Defendants' version of events essentially concurs with the Plaintiff's version of events that led up to the use of force incident. The Defendants asserted that officers pursued the Plaintiff after it was reported that he had assaulted a female occupant in his car. The Plaintiff was eventually found hiding behind a dumpster located behind a convenience store in Troup, Texas. The Defendants asserted that a fight ensued between the Plaintiff and several TDCJ officers after the Plaintiff refused to obey verbal commands to come out from behind the dumpster. Law enforcement witnesses described the fight as a significant altercation. The Plaintiff was eventually subdued and placed in handcuffs and leg restraints. Officers, presumably TDCJ officers, held him down.

The Defendants acknowledged that the Plaintiff alleged that a Cherokee County Sheriff's Deputy drove up and almost ran over him, jumped out of his car, and ran over and began kicking him in the face. They noted that the Plaintiff claims to know that it was a Cherokee County Sheriff's Deputy because of the uniform worn by the person who kicked him. The Plaintiff described the individual as wearing a uniform consisting of brown pants and a tan shirt, and only Cherokee County deputies wore uniforms that were brown and tan. Everyone else wore black. The Defendants asserted that Defendant White was not in uniform at the time; instead, he was in civilian clothes. They added that White was present at the scene well before the Plaintiff was restrained, thus he could not have driven up and jumped out of his car after the Plaintiff was placed in handcuffs and leg restraints and assaulted him as described. They further argued that there is absolutely no evidence that White observed any other officer kick the Plaintiff after he was restrained.

The Defendants asserted that it is undisputed that the only officers who actually engaged in the struggle or fight with the Plaintiff were TDCJ officers. Warden Swift, who was supervising the TDCJ officers present, acknowledged that the Plaintiff's face was bloody before he walked away from the scene and that he walked away only after the Plaintiff had been helped to his knees. Warden Swift further acknowledged that he could have caused injury to the Plaintiff's face due to significant pressure he applied to the back of the Plaintiff's head while the Plaintiff was faced down on the gravel surface during the fight.

The Defendant noted that Cherokee County has a policy regarding use of force. The policy in no way, shape or form encourages excessive use of force. The Defendants added that Cherokee County has a use of force policy and its officers receive training on use of force during their academy training.

The Defendants' motion included footnote 1, which addressed the problem of identifying the person who assaulted the Plaintiff. It was noted that the Defendants filed an advisory (docket entry #21) indicating that it was believed that the unknown Cherokee County Sheriff's Deputy was Defendant White. The advisory was filed at the request of the Court. Defendant White was identified because he was the only Cherokee County deputy on the scene that could have possibly matched the Plaintiff's description. It was noted that the Plaintiff testified that the deputy was approximately 5'8" and 150-180 pounds. The only other two deputies present, Darby and Pate, were significantly larger and could not have matched the description given by the Plaintiff. It was noted that the Plaintiff did not testify definitively during the *Spears* hearing as to whether such individual was in uniform. They argued that it would be completely disingenuous for the Plaintiff to assert in response to their motion that Defendant White is the officer who allegedly kicked him or that the

advisory (now amended as docket entry #68) is somehow evidence which can be used to defeat summary judgment. In the amended advisory, the Defendants asserted that White was identified because he was the only Cherokee County deputy who fit the description provided by the Plaintiff at the *Spears* hearing, but they further asserted that they have not and never did believe that White engaged in the conduct alleged by the Plaintiff.

The remainder of the motion for summary judgment were the legal arguments presented as to why the Defendants should not be held liable. Their arguments will be fully discussed in the Discussion and Analysis section of this Memorandum Opinion.

### Plaintiff's Response

The Plaintiff filed a response (docket entry #76) to the motion for summary judgment, which was replaced by an amended response in opposition to the Defendants' motion for summary judgment (docket entry #79) on November 9, 2009. The Plaintiff asserted that he was suing the Defendants for their use of excessive force and/or alternatively for standing by while other officers used excessive force, in violation of his rights protected by the Fourth and Fourteenth Amendments. He asserted that Defendant White was on duty as a lieutenant in the Cherokee County Sheriff's Department and was at least present along with several other County officers and officers from other agencies during the incident when he was arrested and seriously injured by blunt force trauma without any justification. The Plaintiff noted that it is uncontroverted that he had six teeth knocked out, his nose was broken and his eye and ear were seriously and permanently damaged. He noted that the motion for summary judgment did not argue for qualified immunity and did not explicitly argue the merits of whether the violation occurred. Instead, the motion for summary judgment disputed whether White used the excessive force that caused the Plaintiff's injuries and whether

Cherokee County can be held liable for the use of force. The Plaintiff further noted that the motion for summary judgment does not address his alternative claim that the Defendants may be held liable for standing by while the excessive force was used.

The Plaintiff supported his response with a copy of the original complaint; testimony from the *Spears* hearing; deposition testimony from the Plaintiff, Officer Lanny Becker, Officer Bryan Richards, Warden Steve Swift, Lt. Chris White, and Sheriff James E. Campbell; Troup Police Department narrative accounts of the incident; a statement by Warden Steven R. Swift; various pictures of Cherokee County Sheriff's Department employees; and amended notice of deposition.

The Plaintiff argued that the Defendants have conceded that they believe that White was the assailant. He added that the Defendants have frustrated discovery on this issue, which would justify sanctions as authorized by Fed. R. Civ. P. 37(b). The Plaintiff has also filed an opposed motion for additional sanctions for violations of discovery orders and rules (docket entry #83). The Plaintiff finally argued that Cherokee County may be held liable, particularly in having a policy of tolerating excessive force through its deliberately indifferent policies not to train or supervise which can be inferred from its failure to reprimand, discharge, or admit error after its officers' extraordinary incompetence and catastrophic performance. *See Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 171 (5th Cir. 1985). The Plaintiff's arguments will be fully discussed in the Discussion and Analysis section of this Memorandum Opinion.

### Defendants' Reply

The Defendants filed a reply to the Plaintiff's response and objections to Plaintiff's summary judgment evidence (docket entry #82) on November 12, 2009. The reply is supported by a copy of the deposition of Cherokee County Sheriff James E. Campbell. They asserted that the majority of

the response focused on the advisory (docket entry #21) to the Court in an attempt to create a material factual dispute as to the assailant's identity, when he purportedly knows that none exists. They argued that Defendant White could not possibly have been the one who kicked and hit the Plaintiff in the face, if anyone did so. They asserted that Cherokee County does not condone such behavior and has no policies, procedures or processed (or the lack thereof) that violated the Plaintiff's constitutional rights, and is entitled to summary judgment based on official immunity.

The Defendants objected to the Plaintiff's focus on the advisory and moved the Court to withdraw the advisory. They argued that it was not evidence, nor an admission against self-interest, nor a judicial admission. They further argued that it was not a stipulation, formal concession or admission of any conduct. They argued that the use of the advisory to controvert summary judgment is improper. They moved to withdraw the advisory because the Plaintiff's attempts to use it far beyond its intended purpose.

The Defendants argued that they have complied with the discovery process. It was noted that the Plaintiff testified at the *Spears* hearing that he thought the assailant could possibly have been Jamie Beene. The Defendants asserted that it is unclear what bearing the failure to initially provide Jamie Beene's photograph has on summary judgment issues. The picture was provided on the very day that it was recognized that the picture had not been provided. They noted that they have not used the photograph of Beene or anyone else in support of their motion, thus they described it as a non-issue and irrelevant for purposes of the summary judgment record.

The Defendants rejected the Plaintiff's criticism of using Sheriff Campbell's testimony in explaining why Captain White was identified. They rejected criticism of Sheriff Campbell's inability to answer questions concerning matters of which he had no knowledge.

The Defendants again argued that there is no basis for holding Cherokee County liable based on a failure to train, supervise or discipline. They asserted that Cherokee County does not tolerate excessive force. They argued that it was absurd for the Plaintiff to suggest that Defendant White should be reprimanded or discharged for something that he did not do. They finally argued that Cherokee County cannot be held liable under § 1983 for failure to train where a law enforcement department meets the standards for the training of its officers. *See Gonzales v. Westbrook*, 118 F.Supp.2d 728, 737 (W.D. Tex. 2000). They concluded their reply by arguing that they are entitled to summary judgment.

Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the

non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

The first issue for the Court's consideration concerns the Plaintiff's claim that he was the victim of excessive use of force. The Fourth Amendment reasonableness standard applies with respect to a seizure or arrest of a person. *Tennessee v. Garner*, 471 U.S. 1 (1985); *Graham v. Connor*, 490 U.S. 386 (1989). The Supreme Court has held that a court must determine "whether the totality of the circumstances justified [that] particular sort of search or seizure." *Garner*, 471 U.S. at 8-9. The balancing test "requires careful attention to the facts and circumstances of each

particular case." *Graham*, 490 U.S. at 396. "The "reasonableness" must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight.'" *Id.* In applying these standards, the Fifth Circuit has held that a plaintiff must show that he was seized and that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios,* 381 F.3d 391, 396 (5th Cir. 2004) (citations omitted).

In the present case, the Plaintiff has alleged that he received multiple injuries when he was kicked in the face after he was already subdued. He asserted that it is uncontroverted that he had six teeth knocked out, that his nose was broken and that his eye and ear were seriously and permanently damaged. The facts attributed to the assailant, if true, would not be objectively reasonable. The Plaintiff's factual allegations provide a basis for a potentially meritorious civil rights lawsuit for excessive use of force.

The real question in this case concerns who kicked the Plaintiff in the face and caused his injuries. The Defendants have submitted competent summary judgment evidence suggesting that TDCJ officials, such as Warden Swift, may have caused the injuries. The Plaintiff disputes the claim that Defendant White was not the person who kicked him in the face, although he backed off of this claim to the extent that he alternatively argued that the Defendants may be liable for standing by while excessive force was used. Officer Becker provided some support for the claim that a Cherokee County deputy was the person who kicked the Plaintiff in the mouth.

The parties have disputed the role of the advisory to the Court. It is without question that counsel for the Defendants filed the advisory in response to the Court's request for assistance in the identification of the person who attacked the Plaintiff, if it was possible. Defendant White was

10

identified based on the Plaintiff's description of the assailant at the *Spears* hearing. He was identified because he was the only Cherokee County deputy known to be at the scene who possibly matched the description. The advisory was filed just six days after the *Spears* hearing was conducted. White was identified before discovery was completed. He was identified before the Defendants had the opportunity to depose witnesses, such as Warden Swift, and to formulate an opinion as to what transpired. The Defendants properly argued that the advisory was not evidence, not an admission against self-interest, and not a judicial admission. They properly argued that it was not a stipulation, formal concession or admission of any conduct. On the other hand, the Plaintiff reasonably relied on the advisory, although its significance is subject to debate. For purposes of summary judgment proceedings, the Court must simply conclude that there is a disputed issue of material fact as to the identity of the person who kicked the Plaintiff in the face. The issue will have to be decided by the trier of fact, a jury, at trial. In deciding this issue, the jury will have to decide what weight to give to the advisory, if any. For purposes of summary judgment, there is a disputed issue of material fact as to whether Defendant White was the one who kicked the Plaintiff, thus he is not entitled to summary judgment.

The Plaintiff presented an alternative argument for holding the Defendants liable in the event that Defendant White was not the assailant. He argued that the Defendants may be held liable for standing by while the excessive force was used. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Defendant White may not be liable just because he was present at the incident. He may not be found liable for standing by while excessive force was used. He likewise may not be found liable just

11

because he held a supervisory role as a lieutenant because the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Assuming *arguendo* that Defendant White was not the assailant, there is no competent summary judgment evidence showing that he may be found liable under either of these prongs.

The next issue for the Court's consideration concerns whether Cherokee County may be liable. Once again, the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell,* 436 U.S. at 691. Cherokee County may not be held liable just because a deputy may have used excessive force against the Plaintiff. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In *Board of County Comm'rs of Bryan County v. Brown*, the Supreme Court noted that the line of cases starting with *Monell* require that a "plaintiff seeking to impose municipal liability under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." 520 U.S. 397, 403 (1997). The Supreme Court went on to discuss the concepts of a "policy" and "custom" as follows:

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Id.* at 403-04 (citations omitted). A "plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* at 404. In cases where a "plaintiff is seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. . . . A showing of simple or even heightened negligence will not suffice." *Id.* at 406-407 (citations omitted). Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Id.* at 410. To satisfy the deliberate indifference prong, a plaintiff must ordinarily shown a pattern of violations. *Estate of Davis ex re. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). A single incident of alleged unconstitutional activity will not suffice to hold a municipality liable unless a plaintiff pleads and proves that it was caused by an existing unconstitutional "official policy." *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339-40 (5th Cir. 1989).

The Defendants have cited numerous cases for the proposition that Cherokee County may not be held liable in attempting to show deliberate indifference on the basis of a single incident. *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001); *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998). There must ordinarily be a pattern of similar violence. *Thompson*, 245 F.3d at 459; *Snyder*, 142 F.3d at 798.

They provided competent summary judgment evidence showing that there is no Cherokee County policy encouraging the use of force consistent with the type of force that is alleged to have been used in this case. Furthermore, they correctly argued that the Plaintiff had not shown a pattern of similar violence in Cherokee County that would satisfy the deliberate indifference standard.

The Plaintiff responded by noting that a county's failure to train, supervise or discipline can give rise to its liability. *Brown v. Bryan County, OK*, 219 F.3d 450, 457 and 461 (5th Cir. 2000). The Defendants replied that a failure to train claim cannot succeed if a law enforcement department meets the state standards for the training of its officers. *Gonzales v. Westbrook*, 118 F.Supp.2d 728, 737 (W.D. Tex. 2000). It is noted that *Gonzales* is not binding precedent in the Eastern District of Texas; nonetheless, the Western District of Texas cited several Fifth Circuit cases and a decision by this Court as authority. *Conner v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000); *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir.), *cert. denied*, 506 U.S. 824 (1992); *Huong v. City of Port Arthur*, 961 F.Supp. 1003, 1007 (E.D. Tex. 1997). The Defendants persuasively argued that the Plaintiff has not presented evidence that any alleged inadequacies in the training was so obvious and likely to result in violations of constitutional rights that Cherokee County can be said to have been deliberately indifferent to those rights. *Benavides*, 955 F.2d at 972-73.

The Plaintiff argued that a county's policy of tolerating excessive force through its deliberately indifferent policies to not train or supervise can be inferred from its failure to reprimand, discharge, or admit error after its officer' extraordinary incompetence and catastrophic performance. *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 171 (5th Cir. 1985). He noted that another law enforcement officer reported seeing a Cherokee County deputy kicking him in the mouth while he was helplessly cuffed, shackled, lying on the ground and surrounded by law enforcement officers in

close proximity. He asserted that the Defendants identified White as "believed to be" the officer who did the kicking. Cherokee County, however, did not investigate the cause of the Plaintiff's injuries. Moreover, other evidence shows that Cherokee County does take disciplinary action against its law enforcement officers for more mundane performance problems, but not for excessive force, thereby further suggesting that it is understood that the County tolerates its deputies' use of excessive force. The Plaintiff added that Cherokee County is willing to pay money to settle an excessive use of force claim, yet will not take corrective action. He conceded that the actions taken against him may not be as catastrophic as the situation in *Grandstaff*, since he was not killed, but it was sufficiently dramatic and abhorrent for a jury to conclude that Cherokee County's inaction reflected its deliberate indifference to excessive force.

The *Grandstaff* decision was fully discussed in the decision by the Western District of Texas in *Gonzales v. Westbrook*, *supra*. The court noted that the issue, nonetheless, was whether there was a policy or custom that could result in municipal liability. 118 F.Supp.2d at 737-38 (citing *Granstaff*, 767 F.2d at 171). It was noted that there was no incidents of abuse prior to the incident that was the subject of the lawsuit. *Id.* "What the evidence did show was repeated acts of abuse by several officers and in several episodes on the night in question. The [Fifth Circuit] found this evidence tended to prove a 'disposition to disregard human life and safety so prevalent as to be police policy or custom.'" *Id.* Also, a review of the conduct of the policymaker after the incident, including no reprimands, no discharges and no admissions of error, demonstrated a policy. *Id.* at 738 (citing *Grandstaff*, 767 F.2d at 172).

More recently, the Fifth Circuit noted that *Grandstaff* had not been widely applied in the circuit. *Barkley v. Dillard Dept. Stores, Inc.*, 277 Fed. Appx. 406, 413 (5th Cir. 2008). The

ratification theory had been limited to extreme factual situations. *Id.* It had not been applied where a single officer was involved in shooting a fleeing suspect. *Id.*

In the present case, there has been no evidence of abuse prior to the events that occurred on August 3, 2006. There likewise was no evidence of repeated acts of abuse by Cherokee County deputies on that night. The incident which is the subject of this lawsuit focuses on the actions of one deputy, not the entire department as in *Grandstaff*. The competent summary judgment evidence also shows that Sheriff Campbell investigated the incident. He talked to the deputies that were present at the incident. His discussions with Defendant White did not reveal anything different from White's statement. He was not aware of any serious injuries until after this lawsuit was filed. The Defendants appropriately argued that Cherokee County, through Sheriff Campbell, had no reason to reprimand or discharge White for something that he purportedly did not do. The *Grandstaff* case does not fit the factual circumstances of this case.

The Plaintiff next argued that Cherokee County should be held liable because it had no policy for recording citizen complaints about officers. He asserted that Sheriff Campbell admitted that he had no policy for recording citizen complaints about officers. He noted an Eleventh Circuit decision for the proposition that inadequate policies for recording and dealing with citizen complaints against police officers can serve as evidence that the county's deliberately indifferent policies and customs are the moving force behind a particular violation of rights. *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1212 (11th Cir. 1993).

The Defendants argued in their reply that the Plaintiff failed to point out Sheriff Campbell's testimony regarding the practice. However, on page 9 of the response, the Plaintiff cited pages 46 through 48 of the transcript of Sheriff Campbell's deposition. Sheriff Campbell testified there is no

policy regarding when citizen complaints about officers get documented. He explained that there is no policy, but a very serious complaint would be documented. He added that an abuse complaint would be investigated and documented. He conceded, however, that there is no policy that says when a report of abuse should be documented, but a serious complaint would be investigated.

With respect to the Eleventh Circuit's decision in *Vineyard*, the Defendants argued that the facts were quite different from the present case, where (a) the sheriff sent the two officers actually involved in a complaint to obtain statements, (b) no police report was prepared regarding the circumstances of the arrest, and (c) the department had no policies and procedures manual. *Id.* at 1212. They noted that Sheriff Campbell personally spoke to the officers who were at the scene, a detailed report was prepared by Defendant White regarding the arrest, and the Cherokee County Sheriff's Department does have a policy and procedure manual.

The Court finds the distinctions presented by the Defendants to be persuasive. The Eleventh Circuit found that there was substantial evidence supporting the jury's conclusion that Murray County had inadequate policies of supervision, discipline and training of deputies and that these policies demonstrated the deliberate indifference of Murray County. *Id.* The facts here are distinguishable. Cherokee County had a policy and procedure manual and reports were filled out. The matter was investigated. The competent summary judgment evidence does not support an inference of deliberate indifference on the part of Cherokee County.

The Court further notes that *Vineyard* is not binding authority in the Fifth Circuit, and this Court's review of the case law did not uncover any Fifth Circuit case following or relying on it. The closest case that this Court could find that was analogous to the present case was *Lewis v. Pugh*, 289 Fed. Appx. 767 (5th Cir. 2008). The plaintiff in that case was represented by a partner of the

attorney appointed to represent the Plaintiff in this case. A jury awarded $50,000 in compensatory damages and $250,000 in punitive damages against a City of Jacksonville police officer who had sexually assaulted the plaintiff. The Fifth Circuit affirmed the judgment of this Court awarding the plaintiff $300,000. The issues presented on appeal included whether summary judgment on appeal should have been granted in behalf of the City of Jacksonville and Police Chief Johnson. With respect to keeping records of citizen complaints, the Fifth Circuit found that it "was undisputed that Johnson is a final policymaker and that Lewis suffered a violation of her Fourth Amendment rights, however Lewis has failed to produce any evidence that Johnson had knowledge that a Fourth Amendment violation would be a highly likely consequence of record keeping policy." *Id.* at 776. The Fifth Circuit held that the granting of summary judgment was proper. *Id.* The Fifth Circuit's conclusion is equally applicable in the present case. The Plaintiff has not produced any evidence that Sheriff Campbell or Cherokee County had knowledge that a Fourth Amendment violation would be a highly likely consequence of record keeping policy. There has been no showing that Cherokee County was deliberately indifferent because there was no policy about recording citizen complaints about officers.

For the foregoing reasons, the Plaintiff has failed to meet his burden of creating a genuine issue of material fact regarding whether his injuries were caused by a policy or custom of Cherokee County. Cherokee County is entitled to summary judgment.

The Court again notes that the parties have filed a number of motions that relate to the motion for summary judgment, response and reply. The Defendants' reply included a motion to withdraw the advisory. The Plaintiff responded with a motion to strike amended advisory and response in opposition to Defendants' request to withdraw advisory (docket entry #84). The Plaintiff

simultaneously filed an opposed motion for sanctions for violation of discovery orders and rules (docket entry #83). He complained that the Defendants withheld a photograph of Deputy Beene, although he admitted that the photograph was produced after he learned of and established the violation. He further complained that Cherokee County failed to attend its own deposition. He referred to his response to the motion for summary judgment. In the response, he noted that Cherokee County initially refused to explain how Defendant White was identified in the advisory, however, such information has been disclosed. He argued that the Defendants should be precluded from disputing that White was the assailant. Finally, he complained that the Defendants did not provide information as to Deputy Beene's whereabouts at the time of the incident on August 3, 2006, which was particularly relevant since he speculated at the *Spears* hearing that Beene may have been the assailant. He added that Sheriff Campbell's failure to provide information concerning the whereabouts of any deputies at the time of the incident other than White, Pate and Darby prevented him from discovering the identities of other deputies who may have been at the scene.

      The Court has previously explained in this opinion that the information contained in the advisory and amended advisory are pertinent to this case. The explanation for why Defendant White's name was submitted should go to the jury for consideration. Both parties will be able to put their best spin on the explanation. After all the evidence is presented, the jury will determine whether it believes that Defendant White was the assailant. With respect to sanctions, the Court appreciates the fact that the Plaintiff has endured some frustration in the discovery process. The Court recognized that the effort to identify the assailant would possibly be difficult, and counsel was appointed, in part, because of his ability to get to the truth of the matter. At this juncture, however, it appears that the Plaintiff has received the requested discovery and has not been harmed.

Finally, the Plaintiff has filed a motion for leave to file his pretrial disclosures out of time (docket entry #86). Counsel explained that he did not timely file the pretrial disclosures because he did not notice the deadline until he saw the Defendants' filing. The mistake was his alone. The Defendants' filed a response (docket entry #88) acknowledging that inadvertent mistakes happen and they expressed no opposition to the out of time filing of pretrial disclosures. It is therefore

**ORDERED** that the Defendants' motion for summary judgment (docket entry #69) is **GRANTED**, in part, and **DENIED**, in part. It is further

**ORDERED** that the claims against Cherokee County are **DISMISSED** with prejudice. It is further

**ORDERED** that the Defendants' motion to withdraw advisory is **DENIED**. It is further

**ORDERED** that the Plaintiff's motion to strike amended advisory (docket entry #84) is **DENIED**. It is finally

**ORDERED** that the Plaintiff's motion for leave to file his pretrial disclosures out of time (docket entry #86) is **GRANTED**.

So **ORDERED** and **SIGNED** this **18** day of **November, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE