IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

MICHAEL JONES, #1456028       §

VS.       §       CIVIL ACTION NO. 6:08cv293

CHEROKEE COUNTY, TEXAS, ET AL.       §

## MEMORANDUM OPINION AND
## ORDER OF DISMISSAL

Plaintiff Michael Jones, a Texas prison inmate, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The sole defendant remaining in the lawsuit is Cherokee County Lieutenant Deputy (now Captain) Chris White. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

The present opinion concerns Defendant White's motion for summary judgment (docket entry #109), the Plaintiff's response (docket entry #112) and White's reply (docket entry nos. 113 & 114).

## Facts of the Case

The original complaint was filed on July 14, 2008. The complaint was filed *pro se*. On December 9, 2008, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Plaintiff testified that he was evading arrest from city police in Bullard on August 3, 2006. He ran out of the woods at a convenience store near Troup. He observed a police car and went behind a dumpster to hide. An officer pulled him out from behind the dumpster. Various officers, including officers from the Texas prison system, restrained him, and he gave up.

1

The Plaintiff's complaint focused on events that subsequently occurred. He alleged that an unidentified Cherokee County deputy drove up, ran towards him and kicked him in the face. He then lost consciousness. He did not know the name of the deputy, although he described him as a young officer in his mid to upper twenties, 150 to 180 pounds, and approximately 5'8". He tried to find out the name of the deputy, but his identity was kept confidential. Medical personnel were treating him when he regained consciousness. He was transported to a hospital. The Plaintiff testified that his injuries included broken teeth and swelling around his eyes.

Following the *Spears* hearing, on January 6, 2009, the Court issued an order (docket entry #24) finding that the complexity of the case warranted the appointment of counsel. An attorney was appointed to represent counsel. It was also noted that counsel for the Defendants notified the Court that it was his belief that the unidentified Cherokee County Deputy who allegedly used excessive and unnecessary force was Chris White. Counsel subsequently revealed that White was identified because he was the only Cherokee County deputy at the scene who fit the description of the person described by the Plaintiff as the one who assaulted him. The Plaintiff thus proceeded in this case as if White had admitted that he used force against the Plaintiff. However, White has repeatedly asserted that there was no such admission; instead, counsel identified him because he was the only deputy at the scene who fit the physical description provided by the Plaintiff.

On November 18, 2009, the Court issued an Order of Partial Dismissal (docket entry #94). The claims against Cherokee County were dismissed, but the motion for summary judgment as to White was denied. The Court found that there was a disputed issue of material fact as to whether White was the person who used force against the Plaintiff, thus the motion to dismiss was denied as to him.

A status conference was conducted on December 15, 2009. The Plaintiff complained about defense counsel's submission of White's name as the person who used force against him. He all but conceded that Chris White was not the person who used force against him. Defense counsel, however, reiterated that White's name was put forward because he was the only Cherokee County deputy at the scene who fit the physical description provided by the Plaintiff.

Defendant White's Motion for Summary Judgment

Defendant White filed a second motion for summary judgment (docket entry #109) on February 18, 2010. He asserted that it is undisputed that he was not the unknown officer who allegedly kicked the Plaintiff while he was laying on the ground in restraints. He asserted that he is entitled to summary judgment based on qualified immunity. In support of the motion, he submitted portions of the transcript of the Plaintiff's testimony from the *Spears* hearing. He also provided portions of transcripts from deposition testimony by the Plaintiff, Officer Bryan Richards, himself, Warden Steven Swift, Sheriff James Campbell and Lt. Jimmy Evans. He finally submitted affidavits from himself, Deputy Michael Darby, Deputy Jeremy Pate, Sheriff James Campbell, former deputy Jamie Beene and Deputy Richard Gould.

In discussing the facts, White noted that even though he fits the physical description of the person who allegedly attacked the Plaintiff, he did not otherwise satisfy the description of the assailant. He noted that the Plaintiff described the individual who attacked him as wearing a uniform consisting of brown pants and a tan shirt. The competent summary judgment evidence revealed, however, that he was not in uniform at the time of the incident and that he was wearing civilian clothes. He further noted that the Plaintiff alleged that the person who attacked him arrived on the scene after he was already restrained and that the person got out of his car and started kicking him in the face. White

3

asserted that the competent summary judgment evidence reveals that he was present on the scene well before the Plaintiff was restrained. Among other things, he assisted TDCJ officers place restraints on the Plaintiff.

White asserted that it is undisputed that the only officers who actually engaged in the struggle with the Plaintiff were TDCJ officers. Warden Swift specified that the Plaintiff's face was bloody before he walked away from the scene and that he walked away only after the Plaintiff had been helped to his knees. Warden Swift admitted that he could have been the one who bloodied the Plaintiff's face. White noted that the only Cherokee County deputies that were on the scene were Michael Darby, Jeremy Pate and himself. He was the only deputy who fit the physical description of the assailant that was provided by the Plaintiff. He again added, however, that he was not in uniform. The Court notes that there has been speculation that Deputy Jamie Beene may have been the person who attacked the Plaintiff. Jamie Beene resembles Chris White, but Beene was fishing with his father at a bass tournament on Lake Jacksonville at the time of the incident.

White argued that he is entitled to qualified immunity. More specifically, he argued that he did not violate the Plaintiff's constitutional rights and that his actions were objectively reasonable. He added that the Plaintiff, as opposed to himself, has the burden to show that he violated the Plaintiff's clearly established rights. *See Salas v. Carpenter*, 980 F.2d 299, 306 (1992). He argued that the motion for summary judgment should be granted. The details of his legal arguments will be discussed more fully in the Discussion and Analysis section of this Memorandum Opinion.

<u>Plaintiff's Response</u>

The Plaintiff filed a response (docket entry #112) to the motion for summary judgment on March 3, 2010. His review of the facts reiterated that he was kicked until he was knocked unconscious by an unknown Cherokee County deputy. The deputy knocked out six teeth, broke his nose and

4

permanently damaged his good eye and ear.  He alleged that the Defendants disingenuously identified Defendant White as the unknown deputy, confident they could exonerate him later, and thwart his efforts to discover evidence concerning whether White or someone else was the unknown deputy.  He argued that the Defendants abused various pre-trial proceedings, violated the rules governing discovery and disclosure, as well as Court orders, and thereby prevented him from developing the evidence necessary to prosecute his case and oppose summary judgment.

In a footnote, the Plaintiff stated that he appreciates that the identification of White was made at the Court's informal request.  But, as the case now demonstrates, the practice of informally identifying a defendant loses its utility and causes considerable havoc when defense counsel unqualifiedly identifies somebody who apparently has a pat defense.

The Plaintiff asserted that Defendant White's motion asserts a version of the facts that is both disputed and includes immaterial matters.  He disputed White's choice of words.  For example, White characterized the beating as a fight.  The distinction is important because the Plaintiff did not try to hit, kick or strike any officer.  He noted that White appears to claim that it was undisputed that he was still lying on the ground when he was kicked by an unknown deputy, however, the evidence was that he was kicked while lying down which does not conflict with the possibility that he could have been sitting up sometime before he was kicked while lying down.  The Plaintiff asserted that White's motion relies on self-serving testimony, which raises questions about his credibility.

The Plaintiff summarized the evidence by asserting that it supports the description of the beating described by him.  He added that a photograph of him taken shortly after the incident supports the fact that he was beaten.  He argued that the record and evidence also supports that the Defendants had disingenuously identified White as the unknown office and frustrated discovery to thwart his

attempts to discover evidence of the basis for their identification of White as the unknown deputy or the true identity of the unknown deputy.

The Plaintiff again argued that the Defendants disingenuously identified White as the unknown deputy. He noted that he testified at the *Spears* hearing as to what he remembered from the beating. He referred to Cherokee County deputies wearing tan and brown uniforms, while other police officers wore black. He asserted that defense counsel knew that the Cherokee County deputies wore brown and tan uniforms at the time White was identified and further knew that White had a ready defense because he did not wear a uniform. He rejected defense counsel's claim of acting in good faith in identifying White as the unknown deputy.

The Plaintiff asserted that the Defendants failed to initially disclose photographs of all Cherokee County deputies; failed to disclose the photographs when specifically requested to do so; refused to produce the photographs in the absence of a Court order compelling them to do so; and then even violated a Court order requiring production of the photographs - although misrepresenting that they had complied. At the deposition, the Defendants refused to let a witness answer questions on the subject of White being identified as the unknown deputy and had to be ordered to produce the testimony. The witness was unable to testify about the location of the other deputies. The Plaintiff also complained that defense counsel disrupted depositions by making improper objections when the subjected turned to the identification of White as the unknown deputy.

The Plaintiff complained that in granting summary judgment as to most Defendants, the Court ruled that the Defendants' advisory identifying White as the unknown deputy "was not evidence, not an admission against self-interest, and not a judicial admission, . . . not a stipulation, formal concession or admission of any conduct." The Plaintiff argued that the rulings were erroneous. As a result of the

rulings, there is no evidence that Defendants had identified White as the unknown deputy for a jury to consider at trial or to present in response to White's second summary judgment motion.

The Plaintiff again asserted that the Defendants frustrated his discovery regarding the identity of the unknown deputy. They resisted such discovery repeatedly and strenuously in violation of not only the rules governing disclosures and discovery but in violation of Court orders. He again focused on the initial failure to disclose the photographs of all Cherokee County deputies. He asserted that there has been a concerted effort on the part of the Sheriff's department to conceal the identity of the unknown deputy. He complained that the Court declined to sanction the Defendants.

The Plaintiff closed his response by arguing that the Defendants' course of conduct rendered discovery and pretrial proceedings ineffective. He asserted that while the Court had addressed some of the discovery abuse, its orders have been violated by the Defendants and have been insufficient to correct the Defendants' actions or keep the playing field level. As a result, he has been prevented from obtaining the discovery and evidence necessary to prosecute the case and oppose summary judgment. He argued that there is no dispute that the unknown deputy acted unreasonably and unconstitutionally. The Plaintiff argued that White's liability turns on whether he is the unknown deputy, a fact issue. He finally argued that White is not entitled to summary judgment on the basis of qualified immunity.

<u>Defendant White's Reply</u>

Defendant White filed a reply to the Plaintiff's response (docket entry #113) on March 10, 2010. A second copy of the reply (docket entry #114) was filed on March 12, 2010. He asserted that the response to his motion for summary judgment does not seem to contest his right to summary judgment, as much as it is an attack on his attorney. He stressed that the Plaintiff had once again placed undue emphasis on the advisory filed on December 15, 2008, along with alleged discovery

abuses. He noted that these arguments have been addressed repeatedly by the Defendants. He asserted that the Plaintiff's response went one step further, however, in making arguments that are factually inaccurate and in making far-fetched accusations that are without merit. He argued that despite all of this, summary judgment is proper because he did not hit or kick the Plaintiff and because the Plaintiff failed in his burden to defeat his defense of qualified immunity.

The reply addressed the specific accusations of wrongdoing on the part of the Defendants. The Court notes that accusations of wrongdoing were heretofore itemized in discussing the Plaintiff's response because he indicated at the status conference that he would likely present these matters in an appeal. The Court will not, however, address them point by point once again with respect to the reply because the accusations of wrongdoing actually are a separate issue from the focus of the motion for summary judgment concerning whether Chris White is entitled to summary judgment.

The reply presented additional exhibits in the form of excerpts from deposition testimony of Allen Patton, Stacy Halbert, and Kenneth Arnold, along with the entire deposition testimony of the Plaintiff. The reply asserted that the response is filled with inaccuracies. The reply, nonetheless, went on to focus on whether White was the one who kicked the Plaintiff in the face. White reiterated that the competent summary judgment does not show that he was that person. He argued that the Plaintiff did not show that he is not entitled to summary judgment based on qualified immunity.

<u>Discussion and Analysis</u>

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied,* 488 U.S. 926 (1988); *see also Celotex,* 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson,* 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment.

9

*See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

The issue being considered in this Memorandum Opinion concerns whether White is the unknown deputy who allegedly used excessive force against the Plaintiff. The Court would note at the outset that the Plaintiff's claims made at the *Spears* hearing led the Court to conclude that the Plaintiff had a potentially meritorious civil rights lawsuit based on a claim of excessive use of force. There is no question that he received severe injuries during the incident. His testimony alleged that an unidentified Cherokee County deputy was the person who used force against him. Based on the complexities of this case, particularly with respect to identifying the unknown deputy, counsel was appointed to represent the Plaintiff. Based on the evidence gathered during the discovery process, there is some question as to whether the Plaintiff's injuries were caused by an unknown Cherokee County deputy or prison officials, particularly Warden Swift.

Nonetheless, the focus of this Memorandum Opinion is whether White was the person who used force against him. The competent summary judgement evidence, viewed in a light most favorable to the Plaintiff, yields a conclusion that White was not the person who used force against him. The Plaintiff testified that he concluded that the person who used force against him was a Cherokee County deputy because he wore a brown and tan uniform and only Cherokee County deputies were wearing brown and tan uniforms. White was not wearing a uniform at the time of the incident; instead, he wore civilian clothes. The person identified by the Plaintiff as the one who kicked him was a person who came on the scene only after he was already restrained. White was there before the Plaintiff was restrained. Perhaps the most damning information is the Plaintiff's proclamation when he first saw White during depositions that White was not the person who used force against him. The identity of

the person who used force against the Plaintiff has not been positively determined by him, but it is clear that the person was not Chris White. There is some evidence that the person who used force against him was not even a Cherokee County deputy, but the issue of who used fore is a disputed issue of material fact. There is no dispute, however, that Chris White was not the person who used force against the Plaintiff, thus he is entitled to summary judgment.

The Plaintiff has criticized defense counsel's identification of Chris White as the unknown Cherokee County deputy. Defense counsel has repeatedly stated to the Court that Chris White was identified because he was the only Cherokee County deputy at the scene who fit the description provided by the Plaintiff. The other two deputies were much larger. Defense counsel focused on the physical description. The Plaintiff argued that the Defendants acted in bad faith because they knew that the Plaintiff had testified at the *Spears* hearing that the unknown deputy wore a brown and tan uniform while White was not wearing a uniform. Nonetheless, defense counsel stressed that he focused on the physical description provided. The uniform factor was not an issue in the identification process. The Plaintiff obviously believes that whether White was wearing a uniform should have been a factor, but it was not a concern. Whether White was wearing a uniform perhaps should have been a factor, but it was not. The Court has no reason to believe that the Defendants acted in bad faith in identifying White as the unknown officer because he was the only Cherokee County deputy on the scene who fit the physical description of the unknown Cherokee County deputy.

The final issue raised by White concerns whether he is entitled to summary judgment based on qualified immunity. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999).  The doctrine of qualified immunity shields

government officials "from civil damages liability as long as their actions could reasonably have been

thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d

1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

A two-step process has traditionally been employed in evaluating the defense of qualified

immunity.  *Saucier v. Katz*, 533 U.S. 194 (2001).  A court must first consider whether "the facts

alleged show the officer's conduct violated a constitutional right." *Id.* at 201.  Second, if the plaintiff

has satisfied the first step, courts are required to decide whether the right at issue was "clearly

established" at the time of the defendant's alleged misconduct.  *Id.*  The Fifth Circuit has accordingly

held that "a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable

in light of the legal rules that were clearly established at the time of his or her actions." *McClendon

v. City of Columbia*, 305 F.3d 314 (5th Cir. 2004).  More recently, the Supreme Court held that a case

may be dismissed based on either step in the qualified immunity analysis: "The judges of the district

courts and the courts of appeals should be permitted to exercise their sound discretion in deciding

which of the two prongs of the qualified immunity analysis should be addressed first in the light of the

circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

In the present case, the competent summary judgment evidence does not show that White

violated the Plaintiff's constitutional rights.  Perhaps someone unknown to the Court violated the

Plaintiff's constitutional rights by subjecting him to excessive use of force, but White was not that

person.  Secondly, the Plaintiff has not shown that White's actions were objectively unreasonable in

light of the legal rules that were clearly established at the time of his or her actions.  Defendant White

is entitled to summary judgment based on qualified immunity.

One last matter should be noted. The incident which is the subject of the lawsuit occurred on August 3, 2006. The lawsuit was filed just before the expiration of the statute of limitations on July 14, 2008. The Plaintiff alleged that unknown Cherokee County deputy used excessive force against him while there is some evidence that TDCJ officers actually used force against him. The statute of limitations in Texas for § 1983 actions is two years. *Burrell v. Newsome*, 883 F.2d 416, 419 (5th Cir. 1989); *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993). By the time counsel was appointed to represent the Plaintiff, it was too late to add TDCJ personnel as defendants. For this reason, the lawsuit should be dismissed with prejudice. It is therefore

**ORDERED** that Defendant Chris White's motion for summary judgment (docket entry #109) is **GRANTED**. It is further

**ORDERED** that the complaint is **DISMISSED** with prejudice. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **15** day of **March, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE